## Kirkpatrick *et al.* *versus* Vanhorn *et al.*

It is as much the duty of a warrantee to return his survey within a reasonable time, as it is to make it on the ground. The consequence of his negligence is that he is postponed to an intervening right which is followed up with diligence.

It is the duty of a settler to define his claim, and, if he fail to perform this duty, a subsequent warrantee or settler may compel him to do it, by calling on him to designate his boundaries; when, if he neglect to do it, he cannot complain that land has been taken away from him which he meant to appropriate.

But a warrantee, who surveys any part of a prior settler's claim without first calling on him to define his boundaries, acquires no title thereto.

An unsworn copy of an unofficial survey is not evidence; nor are depositions taken before the board of property.

Consentable lines are easily proved; but to submit a question of a consentable line to the jury, without appropriate evidence, is error.

If a plaintiff in ejectment include in his writ more land than the defendant claims, and there be no disclaimer or surrender until the trial, the plaintiff, whatever the result as to the contested part of the land, will be entitled to recover costs.

ERROR to the Common Pleas of *Westmoreland county*.

This was an ejectment by Jennet Kirkpatrick, Elizabeth Snowden, and Mary Laird, the children and devisees of John Moor, deceased, against Matthias Vanhorn, William Sprowl, and the heirs of John Hill, deceased, for a tract of 160 acres of land in Allegheny township.

On the 18th January 1793, a warrant was issued to John Moor, who was then the deputy surveyor of Westmoreland county, for 300 acres of land, adjoining lands surveyed to Malechia Donnelly. It did not appear, that any official survey was made on this warrant, until the 23d June 1819, when a survey was made and returned into the land office; but there were marks on the ground, made about or shortly after the date of the warrant, and the survey of 1819 was called on its face a resurvey, and recited a survey made in 1794

[Kirkpatrick *et al. v.* Vanhorn *et al.*]

The plaintiffs also claimed under an actual settlement; and, in support of it, they showed, that in 1807, one Foreman entered on the land west of the part in dispute, but part of the tract surveyed in 1819, as tenant of John Moor; and that possession had been kept up by Foreman, and subsequent tenants under Moor, until the present time.

The defendants claimed under a descriptive warrant to John Hill, for 100 acres, dated the 4th February 1814; on which a survey was made of 160 acres, on the 1st May 1818, and accepted on the 20th February 1819. They proved that in 1810, John Hill, by his tenant Myers, entered on the land in dispute, and continued in possession, by successive tenants, without interruption, until 1824 or 1825, when one Burns got into possession, under the holders of the Moor title. In 1826, he brought ejectment for the premises, and in 1829, a verdict and judgment were rendered in his favour, under which he was put into possession, which had been ever since maintained.

On the trial, the plaintiff offered in evidence a copy of an unofficial survey, found among the papers of John Moor, purporting to be a copy of a survey made by him on the 19th March 1794, of a larger tract, embracing the land in dispute. It was certified by Thomas Potter, who was deputy surveyor from 1817 to 1820. The court rejected this evidence, and the plaintiff excepted.

The plaintiff then showed a *caveat* by John Moor, in 1818, against granting a patent on the warrant to John Hill, and offered in evidence the depositions taken before the board of property. But the court rejected the evidence, and sealed a bill of exceptions.

The plaintiff called Peter France to prove the continuity of Moor's possession, by Isaac France, and others, his tenants; and on his cross-examination, this witness testified as follows:—

" I helped out the timber for the France cabin; France said to us he did not know where the line was, but as soon as Foreman would come he would show the line; Foreman came down; Isaac France came along and showed us the line; and read us the letter purporting to be from Moor; the line was 40 or 45 rods above the cabin, near the mouth of a spring run; that same line Foreman showed us in 1810—me and Stitt, who were making sugar above the line; I was there under Hill, making sugar; Isaac France cut the timber on the lower part below that line."

The plaintiff submitted the following points, upon which he requested the court to charge the jury:—

1. That John Moor, by virtue of his settlement and improvement in 1807, had a pre-emption right to 400 acres, in a convenient form, including and adjoining his improvement at the Foreman cabin.

2. That if John Moor, and those who claim under him, continued the improvement commenced in 1807, through their tenants, until 1820, with the design to make it a place of abode, then no

[*Kirkpatrick et al. v. Vanhorn et al.*]

junior settlement could be made on any of the lands adjoining this improvement, commenced in 1807, whereby John Moor, or those claiming under him, could be limited to a less amount of land than 400 acres.

3. The warrant of John Hill, of 4th February 1814, and his survey thereon in 1818, cannot prevail against the earlier settlement and improvement of John Moor, commenced in 1807, and kept up until the present time.

4. If John Moor took out his warrant, the same being descriptive, in 1793, and had a survey thereon in 1794, embracing the land in dispute, and took possession in 1807, by his tenant, Samuel Foreman, and improved the same, and kept up, and continued the possession by other tenants, who succeeded Foreman, until 1820; the subsequent warrant of Hill in 1814, and his survey of a part of the John Moor survey in 1818, although returned to the land office before John Moor made return of his survey, cannot prevail against the earlier survey—possession taken in 1807, and continued until the present time, and improvements by the tenants of Moor, and those who claim under him.

5. If John Hill did not pay for the surplus 60 acres, at the time he returned his survey, then the resurvey of John Moor on the 23d June 1819, and return of the same to the land office, and acceptance of the same on the 8th July 1819, and a patent issued thereon to the devisees of John Moor on 1st December 1823, gave to the plaintiffs a perfect legal title against any claim of John Hill to this surplus 60 acres, included in his survey in 1818.

6. If John Hill did not place his warrant in the hands of the deputy surveyor, until more than two years after its date, then such warrant can have no force or effect whatever against an actual settler on the land subsequent to the date of the warrant.

These points the learned judge answered as follows:—

"1. This point is answered in the affirmative. If the jury believe there was an actual personal residence on the land by John Moor, or his tenants, and kept up, it would give title to the extent of his claim, not exceeding 400 acres. But he might take less; and if he did designate his limits to a less quantity, and make a consentable line with an adjoining settler, taking a less quantity, he and his tenants would be bound to that quantity.

"2. This is answered in the affirmative; if he claimed the land in dispute, and designated his boundaries, and kept his claim to the entire quantity, without any designation of limit short of the whole, and without any agreement or consentable line with the adjoining settler.

"3. This is answered in the affirmative; if Moor had such settlement, and included the land in dispute: see answer to 1st and 2d points.

"4. This is not a descriptive warrant, and the proper title of plaintiff only commenced from the survey and return in 1819.

[Kirkpatrick *et al. v.* Vanhorn *et al.*]

There is no evidence of a survey before that time. The recital in the resurvey is no evidence; and as the warrant was not descriptive, the settlement in 1807 can have no retroactive efficacy, so as to connect with the warrant, and refer the title back to the date of warrant. In regard to the settlement, it is commenced alone.

" 5. This point is answered in the negative.

" 6. This point is answered in the negative; if the jury believe Hill had tenants on the land, and there is no evidence of any independent settlement on the land in dispute, after the warrant to Hill: as to the effect of the original settlement by John Moor and his tenants, see answer to 1st and 2d points."

The court below (BUFFINGTON, P. J), also, in their general charge, instructed the jury as follows :—

" It appears that on the 18th of January 1793, a warrant was issued to John Moor, for 300 acres of land, in Washington township, adjoining lands surveyed to Malechia Donnelly. There is no evidence of any survey made on this warrant till 23d June 1819, when an official survey was made and returned to the land office. It is true, there is evidence of marks on the ground, made about or shortly after the date of the warrant, and the survey of the 23d of June 1819, called on its face a resurvey, recites a survey made in 1794; but neither the marks upon the ground, nor the recital mentioned, is any evidence that an official survey was made.

" The question then arises, at what time the plaintiff's title commenced. If the warrant to Moor was a descriptive warrant, the title would attach from the date, provided it was followed up, within a reasonable time, by a survey and return, or by taking possession. If the warrant was an indescriptive one, the title would not attach till the making of the survey. The only matters of description in this warrant are, that it was for 300 acres in Washington township, adjoining Malechia Donnelly. Do these make it a descriptive warrant? We think not. It does not apply to any particular piece of land. It adjoins Donnelly, it is true; but where? on the east, west, north, or south? This warrant on its face would be no notice to any one examining the land office, to ascertain whether the land in dispute had been appropriated. The commencement of the plaintiff's paper title began with the making of his survey in 1819.

" On the part of defendants it is shown, that on the 4th February 1814, John Hill took out a warrant for 100 acres, which describes the land in dispute, with reasonable certainty. On this a survey was made on 1st of May 1818, of 160 acres, and accepted 20th February 1819. This acceptance completed the contract between the land office and Hill, and the warrant being descriptive, and surveyed and accepted, carried his title back to the 4th February 1814, and all this being before any official survey was made on the Moor warrant, the paper title of the defendant is best, and would prevail if that was the only subject in dispute.

[Kirkpatrick *et al. v.* Vanhorn *et al.*]

" But the plaintiffs further claim under an actual settlement. In support of this they have shown, that one Foreman entered on the land west of the part in dispute, but part of the tract surveyed in 1819, shortly before, or about the year 1807, as a tenant of John Moor, whose title is vested in the present plaintiffs; that possession has been kept up by Foreman and subsequent tenants under the Moor claim, with trifling intervals between the going out of one tenant and the coming in of another, till the present time.

" This would give the plaintiffs the better right, if that settlement extended to the land in controversy. An actual settler has a right to appropriate 400 acres in a convenient shape, including his settlement; but he may take less, and if he does not claim that amount, but to a certain boundary, which would be less than that amount, and excluded other vacant land adjoining, and another appropriates that vacant land either by settlement or warrant, the latter would hold, although the first settler might desire to include it afterwards. Where Foreman claimed to when he entered—whether westward so as to include the Barcley survey, then vacant, or eastward so as to include the land in dispute—we have no distinct evidence at the time.

" On part of the defendants it is shown that, in 1810, John Hill entered on the land in dispute, by his tenant Myers and the widow Roberts, and continued by successive tenants in possession, without material interruption, till 1824 or 1825, when one Burns got into possession under the holders of the Moor title; that in 1826, an ejectment was brought against him which was tried in this court in 1829, and a verdict and judgment were rendered in favour of Hill, who was put into possession, and himself and those holding under him have continued in possession ever since.

" This state of facts raises the question as to whether the land in dispute was included within the claim on the Foreman settlement? Did Foreman, and those claiming under him subsequently, as settlers, extend their claim to the lands afterwards settled and warranted to Hill? or did their claim only extend to the western boundary of the land in dispute? Moor's settlement by his tenants being first, if their claim extended east so as to cover the land in dispute, without an abandonment or consentable boundary with Hill or his tenants, and that claim was kept up until perfected by patent, the plaintiffs here are entitled to recover. But, if the land in dispute was not claimed by Moore's tenants, or was abandoned, or a consentable line was made with the adjoining settlers, under Hill, and Hill, and those claiming under him, kept up his settlement till perfected by warrant, survey, or patent, then the plaintiff would not be entitled to recover. A consentable line between actual settlers on vacant land has always been favourably regarded by the law. There is, in this case, evidence that there

[Kirkpatrick *et al. v.* Vanhorn *et al.*]

was such a consentable line. This evidence is to some extent corroborated by the fact that possession has been held by the respective claimants up to that line, from the first settlement till the bringing of the suit, with the exception of the time that Burns was in, from 1824 to 1829, when he was turned out by the sheriff. But it is said, the declarations of Foreman and France, being mere tenants, as to the extent of their settlement, cannot prejudice the claim of Moor.

"The only title Moor had at that time, was their settlement; and, being his agents to make the settlement, he would be bound by their declarations to adjoining settlers, as to the extent of their boundaries.

"If Moor's title had been good without their settlement, the case might be, and probably would be, different.

"The question, then, is one for the jury. If they find there was such designation of boundaries, or consentable line, the plaintiffs cannot recover. But, if they believe those under whom plaintiffs held, extended their claim over the land in dispute, and continued to claim it till they got the survey and patent, then they are entitled to recover.

"The plaintiffs further contend, there is a small piece of land at the old salt well, of some eight or ten acres, in their patent, to which defendants have shown no title, and they ask, at all events, a verdict for that.

"This suit is brought for 160 acres, the amount of defendants' survey, and it is extremely doubtful if plaintiffs intended to include that small piece in their suit. If they did include it, the question arises—were the defendants in possession of it? The return of the sheriff was *primâ facie* evidence of such possession; but there is some evidence that Hill, and those holding under him, never claimed it, and were never in possession. If the jury believe this, upon that ground, the verdict will be for defendant."

To this charge the plaintiffs excepted; and a verdict and judgment having been rendered for the defendants, the plaintiffs sued out this writ, and here assigned for error:—1. The rejection of the evidence offered by them on the trial; 2. The instruction of the court below to the jury.

*Foster* and *Laird*, for the plaintiffs in error.

*Cowan*, for the defendants in error.

The opinion of the court was delivered by

WOODWARD, J.—We entirely concur with the learned judge, that the warrant of 18th January 1793, to John Moor, was not so descriptive as to locate itself and therefore to confer title from its date. The consequence was, that the plaintiffs' paper title to

[Kirkpatrick *et al. v.* Vanhorn *et al.*]

the land in controversy, commenced with the survey made on the 23d June 1819, which was subsequent to the date of the warrant and survey to John Hill, under which the defendants claim. On the face of the paper, therefore, the best right would seem to be in the defendants. The survey made of the Moor warrant in 1819, is called a resurvey, and recites a survey made March 19th 1794; but that survey, if ever made, was not returned into the land office, nor produced on the trial. It cannot, therefore, avail the plaintiffs. It is as much the duty of a warrant-holder to return his survey within a reasonable time, as it is to make it on the ground. The consequence of his negligence is, that he is postponed to an intervening right which is followed up with diligence.

The court were right, therefore, in making the plaintiffs' case stand on the early settlement and improvement commenced by Moor. It had no other foundation to stand on. And in respect to the rights of Moor as a settler, the instructions were, for the most part, unexceptionable. The answers given to the three first points of the plaintiffs were, however, qualified in two respects, which we deem erroneous.

1. They were such as to lead the jury to consider it the duty of the settler as against a subsequent warrantee to designate his boundaries.

2. They submitted the question of a consentable line without evidence.

A few observations on each of these heads, will express all that we consider it our duty to say of the case. As a general proposition, it is unquestionably true, that it is the duty of a settler to define his claim. Entering on vacant land of the Commonwealth he has a right to appropriate 400 acres and allowance, circumjacent to his improvement, in such reasonable shape as will best suit his purposes, regard being had to soil, timber, water, &c. And because he is a pioneer and generally poor, the Commonwealth has always regarded him with favour, giving him his own time to buy her title, and meanwhile treating his settlement and improvement as a good title against all the rest of the world Of course, it is the duty of a man so indulged and favoured, to lay off the land he means to hold, by lines on the ground, or by the adoption of natural or artificial marks already found there. It is due to the Commonwealth, that she may know what land is for sale, and to other purchasers, that they may not trench upon his pre-emption rights. But if he have failed to perform this duty, a subsequent warrantee or settler may compel him to perform it, by calling on him to designate his boundaries; when, if he neglect to do it, he is not admitted afterwards to complain, that land has been taken away from him which he intended to appropriate.

The general principles of our law on this subject were so well

[Kirkpatrick *et al. v.* Vanhorn *et al.*]

expressed by C. J. TILGHMAN, in Barton *v.* Glasgo, 12 *S. & R.* 153, that I am tempted to quote them at length:—

" When Hess made his improvement, he had a right to take up four hundred acres under it, though he might take as much less as he pleased. And if he had, even in an unofficial manner, designated his boundaries, however little they might contain, any other person might have taken up all the land without them. But if a settler has made no indication of the extent of his claim, it would be prudent in any other person who means to take up the land near him, to call on him, and request him to mark his lines. If this request be not made, but a warrantee proceeds to make his survey, it must be at his own peril, for in case of a dispute, I know no way of deciding it, but by the opinion of a jury as to a reasonable location of the settler's tract, regard being had to shape, soil, water, and other circumstances. The settler, it is true, has no right to more than four hundred acres, but the warrantee cannot locate these four hundred acres just as he pleases. The jury must decide between them. But if the settler refuses, on request, to make his boundaries, his conduct is so unreasonable, that every presumption should be made against him."

Now, to make an immediate application of these principles to the case in hand.

The plaintiffs claimed in virtue of John Moor's improvement, commenced in 1807; the defendants, under the warrant and survey of John Hill of 1818. As between an improver and a subsequent warrantee, the court were called on to declare the effect of the improvement. The improver had either designated his boundaries, or he had not. If he had, Hill could not take any of the land within them, unless they included more than 400 acres and allowance. If he had not, Hill should have called on him to designate them, before laying his warrant. It was not for *him* (Hill) to designate the extent of the improver's rights. But the answers of the court were such as to imply no duty on the part of Hill, whilst Moor's rights were made to depend more or less on the question of his designation of boundaries. It was not pretended Hill had called on Moor to point out the extent of his claim; yet, in answering the plaintiffs' second point, the court, instead of an unqualified affirmative, said, it was answered in the affirmative "*if he* (Moor) *claimed the land in dispute, and designated his boundaries, and kept his claim to the entire quantity without any designation of limit short of the whole, and without any agreement or consentable line with the adjoining settler.*" It seems to us, that this was making the efficacy of Moor's settlement, as *against Hill*, to depend on his designation of boundaries. It was putting the plaintiffs to prove that Moor must have defined his boundaries, though unsolicited, in order to protect himself against a subsequent warrantee. The law is not so. As between

[Kirkpatrick *et al.* *v.* Vanhorn *et al.*]

a settler and a new comer, the presumptions are in favour of the settler. If the land in his vicinity is to be taken up, his rights must be respected. He must have a chance to define his claim. And if the warrantee does not give him opportunity, " he proceeds to make his survey at his peril."

It was strongly alleged that Moor marked his boundaries including less land than he had a right to claim, and there was evidence of marks on the ground. If the old survey which he was said to have made in 1794, had been produced and identified as his work, it ought to have been admitted in evidence, not in aid of the paper title, but as a circumstance of designation, which in connection with the marks on the ground would have been powerful evidence of the extent of his claim. It should have been treated as part of the *res gestæ*, like the declarations of the occupier in Potts *v.* Everhart, 2 *Casey* 493. But instead of the original, an unsworn copy of the old survey was the thing offered, and we think properly rejected. This could not be consider as an office copy, because Moor being himself the deputy surveyor, could not make an official survey for himself. If he made a draft, it was a private paper, and if lost, it was to be proved like any other private paper.

Without the old draft, however, there was evidence of lines on the ground, and of assertions of ownership up to them, which most likely would have rendered the qualified answers of the learned judge, to which I have referred, harmless, if it had not been complicated with what was said about a consentable line.

And this brings me to the second topic of remark. In the answers to points, and in the charge of the court, the attention of the jury is frequently directed to the undoubted right of the settler to limit himself to less than 400 acres, by consenting to a line between himself and his neighbours. If there was evidence that Moor and Hill had agreed on a boundary short of the old marks of 1794, and that Hill's warrant had been laid upon such new line, that was an end of the controversy. The plaintiffs could claim no land which their ancestor had once so distinctly surrendered. But in looking carefully through the case, we can see no evidence of a consentable line. On the contrary, the long-continued improvement of Moor, the claim of all the land up to the salt well—the caveat of 1810—the ejectment of 1826—and the payment of taxes, are all indications of adverse relations, rather than of a holding by an agreed boundary. And what is the evidence on which the court submitted this point to the jury? The plaintiffs had called Peter France to prove the continuity of the Moor improvement, by Isaac France and others. On his cross-examination the witness delivered the following testimony :—

" I helped out the timber for the France cabin ; France said to us he did not know where the line was, but as soon as Foreman

would come, he would show the line; Foreman came down; Isaac France came along and showed us the line, and read us the letter purporting to be from Moor; the line was forty or forty-five rods above the cabin, near the mouth of a spring run, that same line Foreman showed us in 1810—me and Stitt who were making sugar above the line; I was there. under Hill making sugar; Isaac France cut the timber on the lower part below that line."

This must have occurred before the Hill survey, because Foreman went on in 1807, and was succeeded by Isaac France in 1812, who was there only about three years, and Nightingale, the next tenant, came on in 1817, and was in possession when Hill's warrant was surveyed in 1818. Of what line, then, did Peter France speak? Surely not of a line of Hill's survey, for it had not then been made. But Hill's application, made in 1814, was founded on an improvement claimed to have been commenced in 1808. Now, although there was no evidence of the improvement claimed by Hill, commencing in 1808, yet before 1810 he may have made some unofficial line to designate it, and of *that* line France may be understood as speaking. And such a line between improvers, if agreed to, would bind them, not only whilst they held as improvers, but after obtaining their respective office-rights. But when was this line agreed upon as a boundary between Moor and Hill? I cannot find a syllable of evidence of such agreement. Isaac France read a letter from Moor, but what it contained we are left to guess. Did it confess this line? The witness does not say so, and the letter was not in evidence to speak for itself. Foreman pointed out the line in 1810, but he was only the tenant of Moor, and incapable of changing his landlord's boundaries without his consent. And *pointing it out* was not necessarily to confess it, even on the part of the tenant. The witness and Hill made sugar for Hill above this line, and Isaac France cut timber below it. What of such facts? They prove acts of dominion on the land, but they do not prove this to have been a consentable line. Moor was not present, nor had he, so far as we know, knowledge of these acts. His consent and agreement then are not to be implied from such acts.

Consentable lines are generally easily proved. They acquire that sort of notoriety in the neighbourhood—there are so many witnesses of the acts and declarations of the parties recognising a common boundary, that tradition is a safer medium of proof on this subject than on most others. Yet in the evidence sent up, we find nothing worthy to be called proof of Moor's consent to the line in question.

When we observe how largely the learned judge treated of this subject, and how expressly he says there is evidence of a consentable line, we fear we have not got all the evidence on our paperbooks. Assuredly there is no trace of such evidence before us.

[Kirkpatrick *et al. v.* Vanhorn *et al.*]

What McCormick reports Moor to have said in 1817–18 or 20, about having thrown out the Barclay tract, can scarcely be thought evidence to establish this particular line.

On this ground mainly, that the court permitted and encouraged the jury to decide the cause, on a question of which there was no evidence adequate to raise it, the judgment must be reversed. The law of consentable lines was correctly laid down. The fact of a consentable line was found without evidence.

The cause must go back to be retried on these points. In dealing with Moor's prior rights as a settler, it will be of no consequence that his improvement did not adjoin the land in dispute, provided his claim embraced it. If the jury should be satisfied that the land was within his original claim, then they will inquire, upon proper evidence, whether it was subsequently narrowed by a consentable line.

Nor is it material, whether Hill first came on as an improver or warrantee. If subsequent to Moor, he was, in either character, bound to respect Moor's boundaries, if defined; and to give him a chance to define them, if it were not previously done.

We see no error in the bills of exception to evidence, and none in the ruling respecting the small piece of land at the old salt well, except that if this piece be within the plaintiffs' writ, they would be entitled to recover costs up to the time when the defendants disclaimed the possession. If, however, it be not within the writ, the instruction was entirely right.

> The judgment is reversed, and a *venire facias de novo* awarded.